IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDA M. ANDERSON,

        Plaintiff,

vs.                                                            CIV No. 1:21-0034 KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Linda M. Anderson's ("Plaintiff's") Opposed Motion to Reverse and/or Remand (Doc. 24), dated November 8, 2021, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that she is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner responded to Plaintiff's Motion on March 2, 2022 (Doc. 32), and Plaintiff filed a reply brief on March 16, 2022 (Doc. 33). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ erred in his decision and will therefore GRANT Plaintiff's Motion and remand this case back to the SSA for proceedings consistent with this opinion.

### I. Procedural Posture

On September 11, 2014, Plaintiff filed an initial application for disability insurance benefits. (*See* Administrative Record ("AR") at 175-76). Plaintiff alleged that she had become disabled on December 29, 2011. (*Id.* at 175). Her date last insured was December 31, 2015. (*Id.*

at 1341). In 2016, Plaintiff's application was denied at the initial level (*id.* at 73-83), and at the reconsideration level (*id.* at 85-97). ALJ Eric Weiss issued an unfavorable disability decision on February 28, 2018. (*Id*. at 16-28). Plaintiff appealed, and Magistrate Judge Gregory B. Wormuth of this District reversed and remanded Plaintiff's case on February 4, 2020. (*Id*. at 1417-33). On remand, Plaintiff and a vocational expert ("VE") testified at an administrative hearing conducted telephonically by ALJ Weiss on October 14, 2020. (*Id.* at 1363-85). Plaintiff was represented by counsel, who also appeared by telephone. (*Id.* at 1363). Following that hearing, ALJ Weiss issued a second unfavorable disability decision on November 12, 2020. (*Id*. at 1335-59). On January 13, 2021, Plaintiff's appeal of the November 2020 ALJ decision followed. (Doc. 1). It is ALJ Weiss's second unfavorable disability decision that is at issue in this case.

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262 (citation omitted). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* at 1010 (quotation omitted). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

### B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the SSA

will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of her impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). At step four, the claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

ALJ Weiss reviewed Plaintiff's disability claim for a second time pursuant to the five-step sequential evaluation process. (AR at 1335-59). First, he found that Plaintiff met the SSA's insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity during the period from her alleged onset date of December 29, 2011, through her date last insured of December 31, 2015. (*Id.* at 1341). The ALJ found at step two that Plaintiff suffered from the following severe impairments: "cervical spine arthropathy and cervical stenosis and degenerative disc disease; cervical zygapophysial joints; lumbar spine degenerative disc disease and old L1 compression fracture; right bimalleolar ankle fracture, status-post open reduction internal fixation (ORIF) surgery; fibromyalgia; and asthma." (*Id.* at 1341) (citing 20 C.F.R. § 404.1520(c)). He also determined that Plaintiff suffered from the medically-

4

determinable but non-severe impairments of depression; left knee anterior cruciate ligament ("ACL") tear, status-post surgical repair; wrist fractures, status-post ORIF; and right distal femur fracture, status-post surgery. (*Id*. at 1341-42). At step three, the ALJ concluded that Plaintiff did not, through the date last insured, have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 1343).

Moving to the fourth step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*See id.* at 1344-48). Having done so, he concluded that for the relevant period, Plaintiff possessed an RFC to

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) such that she is limited to lifting 20 pounds occasionally and lifting and carrying 10 pounds frequently; occasionally push and pull the same weight with bilateral upper and lower extremities; walk and stand for six hours in an eight-hour workday and sit for six hours in an eight-hour workday, with normally scheduled breaks; occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, kneel, and crawl; occasionally reach overhead with bilateral upper extremities; and avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants such as dust, fumes, odors, and gases.

(*Id.* at 1344). Based on this RFC, ALJ Weiss found that Plaintiff was able to perform her past relevant work as a dental assistant, as the "work did not require the performance of work-related activities precluded by" that RFC. (*Id.* at 1348). Alternatively, the ALJ determined at step five that Plaintiff was able to perform other jobs existing in significant numbers in the national economy, including the representative occupations of cashier II (DOT 211.462-010, light, SVP 2); small products assembler (DOT 706.684-022, light, SVP 2); sales attendant (DOT 299.677-010, light, SVP 2); and office helper (DOT 239.567-010, light, SVP 2). (*Id.* at 1349).

Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time from December 29, 2011, the alleged onset date, through December 31, 2015, the date last insured. (*Id.* at 1350 (citing 20 C.F.R. § 404.1520(f)).

## IV. DISCUSSION

Plaintiff contends that the ALJ Weiss failed (1) to discuss or incorporate into the RFC Physical Therapist Pia Vanheyste's findings as to Plaintiff's ability to lift; (2) to provide a sufficient explanation for discounting Ms. Vanheyste's opinions on sitting; and (3) to properly evaluate Dr. Dianna Fury's opinions on limitations imposed by Plaintiff's fibromyalgia. (*See* Doc. 24 at 24-29). The Court finds that the ALJ failed to discuss or incorporate Ms. Vanheyste's lifting limitations into the RFC and will reverse and remand on that basis.

### A. Ms. Vanheyste's Findings as to Plaintiff's Ability to Lift

On October 11, 2016, Physical Therapist Pia Vanheyste performed a five-hour Physical Work Performance Evaluation on Plaintiff. (AR at 1120-31). Following that evaluation, Ms. Vanheyste determined that Plaintiff's "Overall Level of Work" fell "within the Light range," which her report defined as work that involved exerting "up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly." (*Id*. at 1120). Ms. Vanheyste indicated, however, that the Task Performance Table included within her report offered more detail concerning Plaintiff's "specific abilities." (*Id*.). In the Task Performance Table, Ms. Vanheyste reported that Plaintiff's ***maximum*** abilities were as follows: 14 pounds occasionally for a floor-to-waist lift, 14 pounds occasionally for a waist-to-eye-level lift, 18 pounds occasionally for two-handed carrying, and 16 pounds for carrying with each hand individually. (*See id*. at 1124).

Plaintiff argues that ALJ Weiss erroneously failed to incorporate into the RFC Ms. Vanheyste's findings as to her maximum lifting capacity. (Doc. 24 at 24 (citing AR at 1124)).

Indeed, she insists that the ALJ committed reversible error by failing to discuss these findings and by failing to "explain why [Ms. Vanheyste's] opinion was not adopted." (*Id*. at 25 (citing *Martinez v. Astrue*, 422 F. App'x 719, 724 (10th Cir. 2011); *Wilson v. Colvin*, 541 F. App'x 869, 871 (10th Cir. 2013)).

The standards outlining an ALJ's obligation to articulate his assessment of the evidentiary record are well established:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss he uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Clifton*, 79 F.3d at 1009-10 (internal citations omitted). As a corollary of this rule, the ALJ may not "pick and choose" from among the record, "using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F. 3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Nor may an ALJ "mischaracterize or downplay evidence to support [his] findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Failure to follow these controlling legal standards is grounds for remand. *See, e.g., Byron*, 742 F.2d at 1235.

Here, the Commissioner argues, generally, that the ALJ reasonably evaluated Ms. Vanheyste's functional capacity evaluation in reaching his determination that Plaintiff was limited to lifting 20 pounds occasionally and lifting and carrying 10 pounds frequently. (Doc. 32 at 4 (citing AR at 1344)). She concedes that the ALJ did not mention Ms. Vanheyste's finding that Plaintiff could lift 14 pounds occasionally from floor to waist and from waist to eye level; however, she maintains that this "statement" was "not an opinion in and of itself." (*Id*. (citing 20 C.F.R. § 404.1513(a)(2)). The Commissioner contends that the cases cited by Plaintiff regarding

the failure of an ALJ to address a medical opinion are inapposite here, because the ALJ here *did* address Ms. Vanheyste's medical opinions. (*Id*. at 4-5). She emphasizes that the "ALJ [was] not required to address every single restriction that Ms. Vanheyste tested in his decision; rather, he [was] required to sufficiently explain his reasoning for how he evaluated the opinion overall." (*Id*. at 5 (citing *Martinez v. Colvin*, No. 16-cv-211-GJF, 2016 WL 8230658, at *7 (D.N.M. Dec. 19, 2016))).

Plaintiff describes the Commissioner's argument as "difficult to follow" and without "meaningful support." (Doc. 33 at 1). The Court agrees that the Commissioner's position is not compelling. A medical opinion is a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in particular abilities. 20 C.F.R. § 404.1513(a)(2). In the Court's view, Ms. Vanheyste's finding related to the maximum weight Plaintiff could still lift despite her impairments was a statement about Plaintiff's work-related limitations and, thus, a medical opinion. But even if the statement was merely "objective medical evidence" concerning "medical signs, laboratory findings, or both," *see* 20 C.F.R. § 404.1513(a)(1), the ALJ was not relieved of his duty to address it. After all, an ALJ must address probative objective medical evidence before rejecting it. *See Clifton*, 79 F.3d at 1009-10. By finding that Plaintiff had the RFC to lift up to 20 pounds occasionally, the ALJ effectively rejected Ms. Vanheyste's finding of a 14-pound maximum lifting capacity.

In addition, Plaintiff asserts that the ALJ's treatment of Ms. Vanheyste's finding runs counter to a previous holding by this Court. (Doc. 33 at 1). She argues that "Judge Wormuth already held that the [functional capacity evaluation] performed by Ms. Vanheyste 'provides significant detail about Plaintiff's limitations beyond the general assessment of light work." (*Id*.

at 2 (citing AR at 1429)). The decision to which Plaintiff refers is a February 4, 2020 Order Granting Remand by Judge Wormuth of this District in which he addressed a prior unfavorable disability determination by ALJ Weiss, which related to the same disability claim and the same relevant period. (*See* AR at 1417-33). In that decision, Judge Wormuth determined that ALJ Weiss erroneously failed to consider a medical source statement by Dianna Fury, M.D., Plaintiff's treating physician, as well as an October 11, 2016 functional capacity evaluation. (*Id*. at 1424-33). Judge Wormuth observed that the functional capacity evaluation followed immediately after Dr. Fury's signed statement in the record, and "there [was] at least some evidence from which to surmise that Dr. Fury provided the responses." (*Id*. at 1426). Without resolving the issue of who authored the functional capacity evaluation, Judge Wormuth found that it provided "significant detail about Plaintiff's limitations beyond a general assessment of light work." (*Id*. at 1429). Because ALJ Weiss failed to discuss the functional capacity evaluation or to incorporate its limitations into his hypothetical to the VE, Judge Wormuth concluded that it was unclear whether the jobs identified by the VE were at odds with the evaluation's findings. (*Id*. at 1430). Judge Wormuth reasoned that "[w]here the ALJ relies on VE testimony at steps four and five, the failure to raise hypothetical questions that 'relate with precision [to] all of a claimant's impairments' is reversible error." (*Id*. (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991))).

Critically, the October 11, 2016 functional capacity evaluation referenced by Judge Wormuth is the same evaluation, or at least a portion of the evaluation, that is the subject of Plaintiff's first claim here. But this time the parties and ALJ Weiss are in agreement that Ms. Vanheyste was the author. (*See* Doc. 24 at 4-5 (indicating that Plaintiff attended a functional

9

capacity evaluation with Ms. Vanheyste on referral from Dr. Fury)); (*see also* Doc. 32 at 4-7; AR at 1347).

In his second disability decision, the one at issue in this case, ALJ Weiss discussed Ms. Vanheyste's functional capacity evaluation and indicted that he gave it "some weight." (*See* AR at 1347). He noted that Ms. Vanheyste "opined that [Plaintiff] was able to do light work, with frequent walking and standing, occasional sitting, frequent crawling, kneeling and climbing of a ladder, and occasional squatting and working of arms overhead." (*Id*. (citing AR at 1124). ALJ Weiss also suggested that Ms. Vanheyste's personal evaluation of Plaintiff and the consistency of some of her opinions with the record meant that the evaluation was deserving of at least some weight. (*Id*.) At the same time, he explicitly rejected Ms. Vanheyste's finding that Plaintiff was limited to "occasional sitting[,]" reasoning that such a limitation was not supported by the medical evidence or by Plaintiff's reported activities of daily living, including playing on a computer, driving a vehicle, and attending church. (*Id*.) ALJ Weiss also apparently discounted the weight he gave Ms. Vanheyste's findings on account of their timing. (*See id*. ("Vanheyste provided the opinions ten months after the date last insured.")).

Although ALJ Weiss addressed Ms. Vanheyste's functional capacity evaluation in his second decision, and even explicitly evaluated some of the specific findings therein, he still did not broach the topic of her 14-pound-maximum-lifting capacity. In his defense, the Commissioner submits that "[w]hile the ALJ may not have specifically mentioned the lifting restriction in his decision, [he] did discuss the fact that Ms. Vanheyste opined that Plaintiff was able to do light work, which contemplates lifting restrictions." (Doc. 32 at 5.) In other words, the Commissioner believes that the ALJ's discussion of Ms. Vanheyste's light work finding sufficed to show that he considered all of the relevant medical evidence contained in Ms. Vanheyste's

10

evaluation. Apparently attempting to characterize light work as consistent with a 14-pound lifting limitation, the Commissioner points out that Ms. Vanheyste signed an "FCE Quick Reference" form that listed Plaintiff's physical capacity level as "light" but also reported a 14-pound floor to waist and waist to eye level lifting restriction. (*Id*. (citing AR at 1119)). But the Court does not agree that ALJ Weiss's mention of Ms. Vanheyste's light work finding adequately accounted for Ms. Vanheyste's more specific lifting capacity findings. As Plaintiff puts it, "[t]here is no indication that Ms. Vanheyste's definition of light work caps lifting at twenty (20) pounds," and instead "the evidence demonstrates that 'light work' means something different to Ms. Vanheyse than it does to the Administration." (Doc. 33 at 1-2). Indeed, the Commissioner's rationale ignores the definition of light work articulated in the evaluation itself. Ms. Vanheyste's functional capacity evaluation defined the light range of work as the ability to "exert[] up to 20 pounds of force occasionally, **and/or** up to 10 pounds of force frequently, **and/or** a negligible amount of force constantly." (AR at 1120 (emphasis added)). As the Court understands this definition, Plaintiff could still perform light work with a maximum lifting capacity of 14 pounds, so long as she was capable of exerting 10 pounds of force frequently. The applicable Social Security regulations differ in that they define light work as work "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b); 416.967(b). Critically, under the regulatory definition, Plaintiff could not perform the full range of light work with a maximum lifting capacity of 14 pounds. Ultimately, the Court agrees with Plaintiff that the ALJ's failure to discuss Ms. Vanheyste's maximum lifting capacity findings was error.

Plaintiff goes further, arguing that the ALJ's failure to discuss the 14-pound-lifting limitation was not only error but harmful error requiring remand. To this end, she points to ALJ

Weiss's conclusion that she could perform her past relevant work as a dental assistant. (Doc. 24 at 25). Plaintiff observes that the dental assistant job is categorized by the Dictionary of Occupational Titles as light work, which requires lifting **20 pounds occasionally**. (*Id*. at 24-25); (*see also* AR at 1376 (VE testimony characterizing Plaintiff's dental assistant job as "light" work); 20 C.F.R. § 404.1567(b) (indicating that light work requires lifting no more than 20 pounds at a time); § 416.967(b) (same)). Plaintiff asserts that "[h]ad Ms. Vanheyste's opinions been adopted, the ALJ could have found that the dental assistant job fell outside Plaintiff's RFC." (Doc. 24 at 25). Her argument is well-taken.

Plaintiff also emphasizes that the ALJ did not ask the VE whether the dental assistant job could be performed with a 14-pound maximum lifting capacity. (*Id*.). Instead, he asked the VE to "assume a hypothetical individual is *able to lift 20 pounds occasionally*[,] lift and carry 10 pounds frequently[, and] occasionally push and pull the same weight with bilateral upper and lower extremities." (AR at 1376 (emphasis added)). The ALJ added that the hypothetical individual could "occasionally reach overhead with bilateral upper extremities." (*Id*. at 1376-77). The VE responded as follows:

> Reaching, for the dental assistant is frequent. But I think overhead reaching is incidental to work. So I think that in terms of the physical demands, if it – pulmonary and atmospheric conditions are not present. I believe that it does fit within the hypothetical, Your Honor.

(*Id*. at 1377.)

Plaintiff maintains that remand is warranted so that the ALJ can further develop the record as to whether a 14-pound lifting limitation is compatible with the dental assistant job, either as it is generally performed or as it was actually performed by Plaintiff. (Doc. 24 at 25). To this point, the Commissioner does not respond. But the Court agrees with Judge Wormuth's assessment that Ms. Vanheyste's evaluation provides "significant detail about Plaintiff's

limitations *beyond a general assessment of light work*." (*Id*. at 1429 (emphasis added)). Just as Judge Wormuth held in Plaintiff's first appeal, ALJ Weiss again failed to incorporate limitations of the evaluation into his hypothetical to the VE, rendering it unclear whether jobs identified by the VE were at odds with the evaluation's findings. (*Id*. at 1430).

Although the Court finds that the ALJ's failure to question the VE about whether the 14-pound lifting limitation would preclude Plaintiff's past relevant work as a dental assistant, the ALJ provided an alternate finding that the Court must consider: that Plaintiff could perform other jobs in significant numbers in the national economy. As to these jobs, Plaintiff's counsel asked the VE whether a hypothetical individual with the restrictions identified by the ALJ as well as an additional restriction of lifting only 14 pounds occasionally could perform the light work jobs she identified. (AR at 1381). According to Plaintiff, the 14-pound-lifting limitation eliminated all jobs identified by the VE save one: office helper. (Doc. 24 at 26). With respect to the office helper job, Plaintiff suggests that only 9,750 jobs would have been available in the national economy had the ALJ adopted the lifting limitation reported in Ms. Vanheyste's evaluation. (*Id*. (citing AR at 1382)).

The Court finds the VE's testimony to be a bit more nuanced than Plaintiff describes, but it ultimately arrives at essentially the same conclusion. In response to questioning by Plaintiff's counsel, the VE appears to have testified that an individual with a 14-pound lifting restriction could perform *three* jobs: toll collector, ticket taker, and office helper. (AR at 1381). But other portions of the VE's testimony cast doubt on whether the VE was satisfied that a person with the hypothetical limitations posed by the ALJ could in fact perform these jobs. For instance, when asked whether the hypothetical individual could perform jobs other than dental assistant, the VE responded, "Yes, I believe so. For example, there's a ticket seller, 211.467-030. It's light, SVP –

13

I'm sorry. Scratch that. I got ahead of myself there. Sorry. Office helper, 239.576-010, light, SVP-2, about 13,000 of those jobs in the national economy." (*Id*. at 1377). The best the Court can surmise, the VE appears to have retracted the ticket seller job in favor of the office helper job. After she identified the office helper job, the ALJ asked the VE to identify jobs with "higher numbers." (*Id*. at 1378). The VE did not identify the toll collector job in response; instead, she listed cashier II; small products assembler; and sales attendant. (*Id*.).

Having considered the entirety of the VE's testimony, ALJ Weiss ultimately found that Plaintiff could perform work as an office helper, cashier II, small products assembler, and sales attendant. (*Id*. at 1350). Significantly, though, the VE's testimony suggests that the jobs of cashier II, small products assembler, and sales attendant would be eliminated by a 14-pound lifting restriction. (*See id*. at 1381). Assuming a 14-pound lifting restriction, the VE's testimony is clear only with respect to the office helper job – that is, a hypothetical individual with a 14-pound lifting limitation could perform the office helper job, but the number of jobs available in the national economy would be reduced by approximately 25 percent. (*See id* at 1382). The ALJ did not pass on the question of whether 9,750 jobs (i.e. 75% of 13,000 jobs) constitutes a significant number in the nationally economy. (*See id*. at 1377-82).

The Court finds that remand is warranted so that the ALJ can make a proper step-five determination. Insofar as the ALJ determines on remand that Ms. Vanheyste's maximum lifting capacity measurement should be disregarded, he should address that evidence and explain his reasons for rejecting it.

### B. Ms. Vanheyste's Opinion as to Plaintiff's Ability to Sit

Plaintiff makes a second argument regarding the ALJ's treatment of Ms. Vanheyste's functional capacity evaluation: that he insufficiently explained Ms. Vanheyste's sitting

14

limitations. (Doc. 24 at 26-29). Unlike the lifting limitation, ALJ Weiss's rejection of Ms. Vanheyste's sitting limitation was explicit. (*See* AR at 1347) ("[T]he medical evidence does not support [Ms. Vanheyste's] limitation of occasional sitting.") Similarly, the ALJ reasoned elsewhere in his decision that "there [was] no medical evidence to support greater limitation related to sitting than as determined in the residual functional capacity." (*Id*. at 1348). The RFC, of course, permitted sitting for six hours in an eight-hour workday, with normally scheduled breaks. (*Id.* at 1344.)

ALJ Weiss articulated two reasons for his rejection of Ms. Vanheyste's sitting limitation. First, he explained that a "treatment note indicates that [Plaintiff] appeared to have few functional limitations due to fibromyalgia pain." (*Id*. at 1347-48 (citing AR at 318)). Second, he found that certain of Plaintiff's activities of daily living – "play[ing] on the computer, driv[ing] a vehicle, and attend[ing] church" – require "significant periods of sitting." (*Id*. (citing AR at 252-53, 316)).

Plaintiff emphasizes that the treatment note the ALJ cited regarding fibromyalgia pain was dated December 29, 2011. (*Doc. 24* at 27). She insists that the medical evidence demonstrates that her condition worsened following a July 8, 2012 motor vehicle accident. (*Id*.). For instance, she highlights the 2016 opinion of Dr. Fury that her 2012 car accident exacerbated her neck and back pain. (*Id*. (citing AR at 1112-13)). In that letter opinion, Dr. Fury explained that when she saw Plaintiff in April of 2012, Plaintiff was taking care of her young grandchildren on a regular basis and caring for horses and other animals, but after her July 8, 2012 accident, her neck and low back pain increased to the point that she was "no longer able to care for her grandchildren on a full time basis and had difficulty completing her animal and gardening chores

at home." (AR at 1112-13). Plaintiff observes that the ALJ does not mention any evidence after December 29, 2011, in his evaluation of Ms. Vanheyste's sitting limitation. (Doc. 24 at 27).

Second, Plaintiff contends that the ALJ fails to explain how her daily activities undermine a limitation to occasional (i.e. up to 1/3 of the day) sitting. (*Id*. at 28 (citing AR at 1124)). She points to a record cited by the ALJ in which the medical source reports that she "often falls asleep on the couch watching TV. Then, if she wakes up she may got to bed or she may get up and watch TV more or go play on the computer." (*Id*. (citing AR at 316)). Plaintiff asserts that the "record mentions nothing about how much time [she] spends on her computer or even whether she sits down to use it." (*Id*.) Likewise, she notes that the ALJ did not elicit any testimony regarding how long she sits or whether she alternates between sitting and standing when playing on the computer, driving, or attending church. (*Id*.)

Plaintiff's position has some appeal, as the ALJ's rationale appears to border on speculation. It is a close call whether the ALJ adequately articulated legitimate reasons for his rejection of Ms. Vanheyste's sitting limitation. Because the Court is already remanding for a reevaluation of Ms. Vanheyste's report and a discussion of the limitations therein, the Court directs the ALJ to also revisit his finding as to Ms. Vanheyste's sitting limitation. If the reevaluation of Ms. Vanheyste's findings does not alter the ALJ's conclusion that the sitting limitation should be rejected, he should more clearly and thoroughly articulate the reasons for such a finding.

### C. Dr. Fury's Opinion as to Plaintiff's Ability to Concentrate

Plaintiff's final argument is that the ALJ failed to properly evaluate her treating physician's opinions as to limitations caused by her fibromyalgia. (Doc. 24 at 29-31). Plaintiff submits that had the ALJ properly considered the opinions of Dianna Fury, M.D., he would have

incorporated mental limitations into her RFC. (*See* Doc. 33 at 6). In her "Fibromyalgia Medical Source Statement," Dr. Fury concluded that Plaintiff was "incapable of even 'low stress' jobs." (AR at 1115). Of relevance to Plaintiff's arguments here, Dr. Fury also opined that Plaintiff's fibromyalgia symptoms "constantly" interfere with the attention and concentration she needs to perform "even simple work tasks." (*Id.*).

ALJ Weiss gave Dr. Fury's opinions "little weight," describing them as vague, not supported by a function-by-function assessment, and based upon Plaintiff's subjective reports. (*Id.* at 1346-47). Having reviewed Dr. Fury's Medical Source Statement, the Court finds the ALJ's critiques to be fair. Dr. Fury provided little detail regarding Plaintiff's fibromyalgia symptoms in her statement and, in fact, left much of the assessment form blank. (*See id.* at 1115-17); *see also Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (a treating physician's opinions may be rejected if they are brief, conclusory and unsupported by medical evidence). Moreover, as ALJ Weiss observed, "Dr. Fury's own examinations found mostly benign findings." (*Id.* at 1347 (citing AR at 994, 1007, 1073-74)). The records ALJ Weiss cited reveal that Dr. Fury reported normal findings, including appropriate mood and effect and normal memory, insight, and judgment. (*See, e.g.*, *id.* at 994, 1008, 1074).

Notably, the ALJ *explicitly* rejected Dr. Fury's concentration opinion, finding that there was "no support in the medical evidence for fibromyalgia being the cause of concentration problems." (*Id.* at 1347). But Plaintiff asserts that in so doing the ALJ failed to "meaningfully consider" Dr. Fury's opinion. (Doc. 24 at 30 (citing AR at 1115)). Plaintiff insists that the opinion was supported by her own presentation, as recorded by Dr. Fury, and by objective tests, such as the PHQ-9.[1] (*Id.* (citing *id.* at 5-6). The Court is not convinced, however, that either Dr.

---

[1] Plaintiff highlights her March 31, 2014 PHQ-9 score of 16, which she explains indicates "moderately severe depression," and she notes Dr. Fury's statement that she presented with a mood disorder secondary

17

Fury's report or Plaintiff's PHQ-9 scores attribute Plaintiff's concentration difficulties to her fibromyalgia. And, critically, Plaintiff does not cite any evidence, other than Dr. Fury's opinion, that directly indicates a causal relationship. Plaintiff asserts that the ALJ's contrary finding is "pure speculation." (Doc. 33 at 5). In support, she explains that "Dr. Fury opines that fibromyalgia causes Plaintiff to suffer problems with concentration." (*Id*.). But it is precisely Dr. Fury's opinion that the ALJ found unsupported for the reasons indicated above. Plaintiff is effectively asking the Court to reweigh the evidence, something this Court cannot do. *See Langley*, 373 F.3d at 1118.

Plaintiff also takes issue with the ALJ's finding that Dr. Fury's opinions were based on her subjective reports. She submits that, typically, fibromyalgia symptoms *are* "entirely subjective," as "there are no laboratory tests for the presence or severity of fibromyalgia." (Doc. 24 at 29 (quoting *Moore v. Barnhart*, 447 F. App'x 93 (10th Cir. 2004))). "[A]lthough the existence or severity of fibromyalgia may not be determinable by objective medical tests," the Tenth Circuit "has suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed." *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (citing *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n.1 (10th Cir. 2003); *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003)). In *Tarpley v. Colvin*, the Tenth Circuit upheld an ALJ's rejection of treating doctors' opinions as to a claimant's limitations from fibromyalgia. 601 F. App'x at 643. There, the court reasoned that there was "very little" in the providers' medical records to indicate that the claimant was as functionally limited as the providers opined. *Id*. The court noted, for instance, that the examination records revealed that the

---

to chronic pain and reported difficulty concentrating and sleeping. (Doc. 24 a 6 (citing AR at 1171-74)). Plaintiff also highlights her May 25, 2016 PHQ-9 score of 12, which she explains indicates "moderate depression." (*Id*. (citing AR at 1069-75)).

18

claimant had full range of motion in her joints, normal strength, and the ability to walk and move easily. *Id*. The Tenth Circuit also emphasized that medication alleviated many of the claimant's symptoms. *Id*.

As the Commissioner observes here, ALJ Weiss noted that Plaintiff found relief from her symptoms with treatment, including medications, nerve ablations, injections, and physical therapy. (AR at 1345, 1348 (citing AR at 335, 453, 730, 907, 1332, 1345)). Specifically, the ALJ highlighted an April 7, 2014 treatment note from William Evan Rivers, D.O. that indicated Plaintiff "had profound relief of neck symptoms after the denervation procedures." (*Id*. at 1345 (citing AR at 730)). According to Dr. Rivers, denervation procedures "are generally effective for between 6 and 24 months at a time and are repeatable with a high chance of success." (*Id*. at 730.) ALJ Weiss also observed that Plaintiff's medical records indicated few functional limitations from fibromyalgia (*id*. at 1346 (citing AR at 316)), and he cited medical records indicating normal mental status findings (*id*. at 1348 (citing AR at 918, 1596, 1663)). Moreover, the ALJ observed that "examinations produced normal findings, including normal strength, normal reflexes, no muscle atrophy, intact sensation, no extremity edema, normal pulses, negative straight leg-raising test, normal coordination/balance, and normal gait." (*Id*. at 1345 (citing AR at 336, 488, 1325)).

Ultimately, the Court is satisfied that the ALJ gave specific, legitimate reasons for rejecting Dr. Fury's opinions related to Plaintiff's fibromyalgia symptoms and that substantial evidence supports his findings in this regard. The Court finds no error in the ALJ's treatment of Dr. Fury's opinion or in his rejection of Dr. Fury's concentration limitation.

## V. Conclusion

The ALJ erred in his review of Plaintiff's application for disability insurance benefits by failing to adequately evaluate medical evidence in accordance with controlling legal standards. Accordingly, Plaintiff's Opposed Motion to Reverse and/or Remand (Doc. 24) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**